**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**

|  |  |
|---|---|
| OLGA PONOROVSKY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JPMORGAN CHASE BANK, N.A.,<br>d/b/a CHASE BANK and JOHN AND JANE<br>DOE EMPLOYEES 1-10 of the above-named<br>institutions,<br><br>　　　　Defendants. | Case No. 0:25-cv-62640-RS |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

PLAINTIFF OLGA PANOROVSKY, by her attorneys Robert W. Georges of KONTA GEORGES & BUZA P.C. and Andrew R. Frisch of MORGAN & MORGAN, P.A., bring these claims for negligence, breach of fiduciary duty and negligent supervision.  In support of the Amended Complaint, Plaintiff states as follows:

### JURISDICTION

1. This is an action for damages more than $50,000.

2. This Court has jurisdiction over Plaintiff's claims because Plaintiff resides in this jurisdiction, Defendant JPMORGAN CHASE BANK, N.A., d/b/a CHASE BANK own and operate a retail bank in the jurisdiction, and the acts that gave rise to this litigation took place in this jurisdiction.

**PARTIES**

3.     Plaintiff OLGA PONOROVSKY is an 80-year-old retired engineer and a resident of Hallandale Beach, Florida.

4.     Plaintiff is a retired widower, whose mental faculties have declined significantly due to her age such that she is dependent on others for assistance with her basic day-to-day living needs.

5.     Specifically, Plaintiff: cannot live alone safely; needs assistance with basic administrative and personal tasks; has declining hand-eye coordination and skills; has declining cognitive abilities; has issues with basic short-term and long-term memory and recall; and is emotionally vulnerable.

6.     At all times relevant hereto, Plaintiff OLGA PONOROVSKY was and is a "vulnerable adult" as defined by Fla. Stats. § 415.102(27), because her ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to the infirmities of aging.

7.     At all times material hereto, as a result of the infirmities of aging, Plaintiff was unable to recognize that she was the victim of a well-known financial scam, largely targeting seniors similarly infirm due to their advanced age(s).

8.     As a "vulnerable adult" Plaintiff is more trusting and less pensive than other members of the community and thus unable to protect herself from the type of financial scam/harm that she ultimately fell victim to, as alleged herein.

9.     A non-vulnerable adult would not have fallen victim to the obvious financial scam that Plaintiff was victimized by, because of the obvious nature of the financial scam.

10.     At all times relevant hereto, Defendant, JPMorgan Chase Bank, N.A. d/b/a Chase Bank and its employees and agents were aware that Plaintiff OLGA PONOROVSKY was a "vulnerable adult" as defined by Fla. Stats. § 415.102(27).

11.     At all times relevant hereto, Plaintiff OLGA PONOROVSKY was and is a "[s]pecified adult" as defined by Fla. Stats. § 414.10341(1)(c).

12.     At all times relevant hereto, JPMorgan Chase Bank, N.A. d/b/a Chase Bank and its employees and agents were aware that Plaintiff OLGA PONOROVSKY was a "[s]pecified adult" as defined by Fla. Stats. § 414.10341(1)(c).

13.     JPMorgan Chase & Co. is a Delaware corporation with its primary/principal place of business located at 383 Madison Avenue, New York, New York 10179.

14.     JPMorgan Chase & Co. is the parent company of Defendant JPMorgan Chase Bank, N.A., formed in 2000 from the merger of J.P. Morgan & Co. and Chase Manhattan.

15.     JPMorgan Chase & Co. is a leading global financial services firm with $2.6 trillion in assets and operations worldwide.

16.     JPMorgan Chase & Co. is the holding company for various subsidiaries, including JPMorgan Chase Bank, N.A.

17.     At all times material hereto, JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. had integrated operations, comingled assets and liabilities, and shared common management and employees.

18.     Defendant JPMorgan Chase Bank, N.A. is a national banking association with its primary/principal place of business located at 1111 Polaris Parkway, Columbus, Ohio 43240.

19.     Defendant JPMorgan Chase Bank, N.A. is a wholly-owned subsidiary of JPMorgan Chase & Co.

20. Defendant JPMorgan Chase Bank, N.A. is the legal entity that provides many bank products and services, through the "Chase" brand, including the retail banking services that form the basis of the lawsuit here.

21. Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "CHASE BANK") operates retail banking branches through the United States and throughout the world through which they provide client services for their account holders, including Plaintiff here.

22. CHASE BANK is a "[b]ank, savings and loan, or credit union officer, trustee, or employee" as defined by Fla. Stats. § 415.1034(1)(a)(8).

23. CHASE BANK is a "[f]inancial institution" as defined by Fla. Stats. § 415.10341(1)(b).

24. Plaintiff OLGA PONOROVSKY is a longstanding client of CHASE BANK having opened her checking account over thirty (30) years ago.

25. Plaintiff OLGA PONOROVSKY's interactions with CHASE BANK relevant to the transactions listed below occurred at CHASE BANK's retail location at 1665 E Hallandale Beach Blvd, Hallandale Beach, FL 33009, and through Defendant CHASE BANK's employees JOHN AND JANE DOE EMPLOYEES 1-10, who were directly responsible for facilitating the plainly suspicious transactions during in-person visits whereby Plaintiff OLGA PONOROVSKY withdrew uncharacteristically large sums of money that completely contrasted her decades long historical banking patterns.

26. Plaintiff OLGA PONOROVSKY's interactions with each Defendant, and their JOHN AND JANE DOE EMPLOYEES 1-10 occurred primarily at CHASE BANK'S location at 1665 E Hallandale Beach Blvd, Hallandale Beach, FL 33009 and/or through their employees who were directly responsible for assisting with the disputed transactions.

27.     CHASE BANK maintains and promotes to the public its internal fraud detection protocols, including but not limited to elder fraud and anti-money laundering (AML) policies and procedures, employee oversight, and escalation procedures applicable to retail clients such Plaintiff OLGA PONOROVSKY.

28.     CHASE BANK is vicariously liable over all their servants, agents, and employees, including JOHN AND JANE DOE EMPLOYEES 1-10 and other employees who participated in and failed to prevent the suspicious transactions identified below.

29.     CHASE BANK is responsible for and does oversee branch-level training, monitoring suspicious activities, and addressing internal procedural failures.

30.     Plaintiff OLGA PONOROVSKY has banked with CHASE BANK for over 30 years.

31.     Plaintiff OLGA PONOROVSKY regularly banked at CHASE BANK located at 1665 E Hallandale Beach Blvd, Hallandale Beach, FL 33009 for approximately twelve (12) years and routinely interacted with the teller and managerial staff for her transactions, including the ones listed herein.

32.     Despite a modest banking history, CHASE BANK employees, including JOHN AND JANE DOE EMPLOYEES 1-10, with actual knowledge that the transactions at issue were made as a result of financial exploitation--as defined by Fla. Stats. § 415.10341(1)(a)--processed thirty (30) high-risk and suspicious transactions – including withdrawals of $80,000.00, $100,000.00, $149,000.00 and $210,000.00 dollars – over five (5) months without delaying, stopping or preventing even a single one of the transactions through the bank's anti-money laundering (AML) or elder fraud policies and procedures.

33.     Taken together, the transactions at issue totaled over $1.3 million dollars.

34.     CHASE BANK's internal systems flagged each of the transactions at issue as "suspicious" before, during and after each of the transactions was processed by CHASE BANK.

35.     Because CHASE BANK flagged the transactions at issue as "suspicious," CHASE BANK had actual knowledge that same were suspicious.

36.     Despite its knowledge of the suspicious nature of the transactions, CHASE BANK failed to report the suspected financial exploitation of OLGA PONOROVSKY as required by Fla. Stat. § 415.1034, which requires the mandatory reporting of abuse, neglect, or exploitation through the Central Abuse Hotline maintained by the Florida Department of Children and Families ("Central Abuse Hotline").

37.     These transactions were conducted by Plaintiff OLGA PONOROVSKY in person at CHASE BANK'S branch using withdrawal slips provided by and submitted to CHASE BANK employees, including JOHN AND JANE DOE EMPLOYEES 1-10.

38.     Despite knowing and suspecting that these transactions were the result of elder financial exploitation, CHASE BANK and its agents failed to alert Plaintiff OLGA PONOROVSKY or the Central Abuse Hotline regarding any of these obviously suspicious transactions.

39.     Had CHASE BANK complied with its reporting obligations under the Adult Protective Services Act, Fla Stats. § 415.101, *et seq*., with regard to any or all of the transactions at issue, all future transactions would have been prevented.

40.     Plaintiff has been injured by CHASE BANK's failure to report and/or stop the subject financial transactions and exploitation in an amount greater than $50,000.

41.     Defendants JOHN AND JANE DOE EMPLOYEES 1-10 are unidentified employees, officers, agents, or representatives of CHASE BANK, whose identities are presently

unknown, and who were responsible for processing, approving, or overseeing the thirty (30) transactions described herein.

42.     CHASE BANK is responsible for the acts and omissions of their servants, agents, and employees through the theory of respondeat superior.

**BACKGROUND**

43.     Financial exploitation scams involving older adults are a horrific epidemic well-known throughout the U.S., and specifically in the banking industry causing, according to CHASE BANK's own website, an estimated $28.3 billion dollars in losses annually.

44.     Last year it was reported that 147,127 complaints of financial scams targeting the elderly were made to the FBI.

45.     The actual dollar amount of annual loss and the number of victims is no doubt significantly higher as it is common knowledge that many victims do not report their unfortunes to law enforcement due to embarrassment and shame.

46.     In response to this epidemic, CHASE BANK advertises to the general public that they are aware of this problem and that they are taking steps to protect their elderly clients' money and assets.

47.     CHASE BANK, among other initiatives, dedicates many sections and pages on their website at Chase.com to the issue of elder fraud/financial exploitation.

48.     On its homepage at Chase.com under the prominently placed heading link "Education & goals" CHASE BANK's website provides and links to voluminous materials on elder banking fraud, including the identical elder exploitation scam that Plaintiff OLGA PONOROVSKY was victimized by.

49.     In the drop-down menu under "Education & goals" the public is led to a link to CHASE BANK's "Security Center" webpage which states specifically: "Older adults in particular are at risk for fraud. Learn how you can help us protect your accounts."  There are also live links labeled: "How we protect you", "What you can do", "Help safeguard seniors", and "Spot Scams".

50.     All of the aforementioned links provide information on how CHASE BANK safeguards their customers from financial exploitation by nefarious third-party actors.

51.     On this "Security Center" home page, there are headings that read: "Let's work together to help keep your account safe" and "How we protect you".  Under that, the webpage states, "We're continuously working to make your banking safer. See how we're dedicated to helping protect you and your accounts."  Below those sentences is a live link that reads "Learn more."

52.     Next to the "Let's work together to help keep your account safe" heading and below "How we protect you," there is a "Learn more" link. Under "Learn more," the CHASE BANK web page states: "How we help protect you" and the page goes on to detail, "how we work hard to help keep it safe.'  This webpage further states, "**We use sophisticated security tools to help safeguard your money**" and "If we spot suspicious activity on your account, we may place a temporary hold on it." (emphasis added)

53.     Under the "Help safeguard seniors" and "Spot Scams" sections, the website describes many of the common frauds that target the elderly, including a section on "investment scams" – describing essentially the exact scam that Plaintiff OLGA PONOROVSKY was a victim of.

54.     In this scam, as described on CHASE BANK's website, scammers befriend the victim online and begin a relationship where they gain the victim's trust. After a period of time,

the scammers get the victim to invest a small amount of money in what appears to be a legitimate investment. The scammers then continually increase the amount of the "investments" before they ultimately "take the money and disappear."

55.     Internally, CHASE BANK requires all banking employees to regularly take training courses in elder fraud and anti-money laundering (hereinafter "AML") to identify, flag and prevent suspicious transactions, including transactions that may be the result of elder fraud/exploitation or money laundering.

56.     This training includes training to recognize suspicious transactions that are unusual or suspicious on their face, including but not limited to because of the age of the customer (over 65), the amount of the transaction(s), and/or because the transactions are uncharacteristic of the customer's established banking practices.

57.     Here, CHASE BANK knew, at the time that the subject transactions were made and thereafter, that Plaintiff OLGA PONOROVSKY made these thirty (30) suspicious transactions as a result of one of the very elder financial exploitation scams highlighted on its website, over the course of five (5) months, at the same retail Chase Bank location, totaling over $1.3 million dollars.

58.     While each transaction was suspicious on its face, taken together, the transactions at issue demonstrated a pattern that was well known by CHASE BANK, to constitute elder exploitation and fraud, and CHASE BANK's systems flagged same as suspicious.

59.     Despite this knowledge, CHASE BANK failed to take any reasonable steps to protect Plaintiff OLGA PONOROVSKY's money causing her to lose her retirement savings.

60.     These transactions were on their face obviously suspicious considering Plaintiff's modest banking history over thirty (30) years with CHASE BANK.

61.     Prior to the subject transactions, Plaintiff OLGA PONOROSKY had never before made this many cash withdrawals in such a short period of time.

62.     Prior to the subject transactions, Plaintiff OLGA PONOROSKY had never before made withdrawals of such large amounts of cash, specifically $80,000.00, $100,000.00, $149,000.00 and $210,000.00 dollars per withdrawal.

63.     As reflected on her monthly bank statements, in or about May 2024, Plaintiff OLGA PONOROVSKY'S account was upgraded from a Chase Premier Plus Checking account to a Chase Private Client account.

64.     CHASE BANK holds out to the public that a Chase Private Client account holder receives a higher level of service, including a dedicated Private Client Banker more attuned to the account-holder's specific needs.

65.     At no time did any Private Client Banker contact Plaintiff OLGAPONOROVSKY about the above transactions.

66.     CHASE BANK uses a combination of behavioral analytics, real-time transaction monitoring and machine learning to identify anomalies in customer activities.

67.     CHASE BANK analyzes data points like transaction history, location and device information to build a profile of customer behavior and automatically flags any deviations.

### **FACTS**

68.     Beginning in or about September 2023, Plaintiff OLGA PONOROVSKY was the victim of the very type of elder exploitation scam CHASE BANK outlines on their website.

69.     At this time, Plaintiff OLGA PONOROVSKY responded to an online advertisement promoting an investment opportunity.

70.    The nefarious third-party actors built a relationship with the Plaintiff OLGA PONOROVSKY over numerous communications and conversations leading her to believe she was "investing" a couple thousand dollars.

71.    Through a series of subsequent communications and conversations, the fraudsters ultimately persuaded the Plaintiff OLGA PONOROVSKY to start withdrawing and wiring large sums of money to their "company" with promises of returns that never occurred.

72.    On November 28, 2023, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $40,000.00.

73.    On December 13, 2023, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $41,300.00.

74.    On January 29, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $6,500.00.

75.    On February 15, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $26,000.00.

11

76.     On February 22, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $28,000.00.

77.     On February 27, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $25,000.00.

78.     On February 29, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $5,000.00.

79.     On March 4, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $6,500.00.

80.     On March 5, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $4,750.00.

81.     On March 7, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with

Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $35,000.00.

82. On March 8, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $80,000.00.

83. On March 12, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $210,000.00.

84. On March 14, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $49,300.00.

85. On March 19, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $100,000.00.

86. On March 20, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $58,000.00.

87.     On March 27, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $100,000.00.

88.     On March 29, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $100,000.00.

89.     On April 2, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $50,000.00.

90.     On April 8, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $5,000.00.

91.     On April 9, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $50,000.00.

92.     On April 12, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $149,000.00.

93.     On April 17, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with

Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $80,000.00.

94.     On April 25, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $3,100.00.

95.     On May 8, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $15,000.00.

96.     On May 31, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $5,000.00.

97.     On June 7, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $30,000.00.

98.     On June 10, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $27,700.00.

99.     On June 17, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $31,000.00.

100.    On June 18, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $18,000.00.

101.    On July 22, 2024, Plaintiff OLGA PONOROVSKY walked into CHASE BANK'S retail bank at 1665 E Hallandale Blvd., Hallandale Beach FL 33009 and met with Defendants JOHN AND JANE DOE EMPLOYEES 1-10 who assisted her with a withdrawal of $3,750.00.

102.    At no time during any of the above-described transactions did CHASE BANK flag, delay or stop any of these transactions despite Plaintiff OLGA PONOROVSKY'S age and modest banking history – and the plainly suspicious nature of these transactions.

103.    At no time during any of the above-described transactions did any of  the Defendants JOHN AND JANE DOES EMPLOYEES 1-10 flag, delay or stop any of these transactions despite Plaintiff OLGA PONOROVSKY'S age and modest banking history – and the plainly suspicious nature of these transactions.

104.    At no time during the above-described transactions did CHASE BANK ask any questions about the nature of these transactions, report the transactions to the Central Abuse Hotline as required by Florida law, or freeze Plaintiff OLGA PONOROVSKY's account or transactions.

105.    At no time during the above-described transactions did Defendants JOHN AND JANE DOES EMPLOYEES 1-10 ask any questions about the nature of these transactions, report the transactions to the Central Abuse Hotline as required by Florida law, or freeze Plaintiff OLGA PONOROVSKY's account or transactions.

106.    CHASE BANK failed to take any of the aforementioned actions despite CHASE BANK's protocols and internal systems which flagged the transactions as "suspicious," elder

16

financial exploitation and/or money laundering and provided CHASE BANK with actual knowledge that these transactions were financially exploitive of a "vulnerable adult" triggering CHASE BANK's reporting obligations pursuant to Fla. Stats. § 415.101, *et seq*.

### FIRST CAUSE OF ACTION
### NEGLIGENCE

107.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 106 as if fully set forth herein.

108.  CHASE BANK owed Plaintiff a duty to exercise reasonable care in safeguarding her accounts, protecting her from elder financial exploitation, and adhering to industry standards regarding elder financial abuse and suspicious transactions protocols.

109.  During the above-described events, Plaintiff was an elderly "vulnerable adult" and therefore a member of the protected class set forth in Florida Adult Protective Services Act Statute §415.111.

110.  At all times relevant hereto, Plaintiff OLGA PONOROVSKY was and is a "[s]pecified adult" as defined by Fla. Stats. § 414.10341(1)(c), and therefore a member of the protected class set forth in the Florida Adult Protective Services Act Statute.

111.  CHASE BANK'S internal elder fraud, anti-money laundering (AML), and suspicious activity reports (SAR) systems identified Plaintiff's above-described withdrawals as suspicious for fraud and/or elder financial exploitation.

112.  Notwithstanding CHASE BANK's actual knowledge that the relevant transactions were suspicious for elder financial exploitation, CHASE BANK failed to take any action to protect Plaintiff.

113. Under Florida Adult Protective Services Act Statute §415.111(1), because CHASE BANK identified these transactions as suspicious for fraud and/or exploitation, CHASE BANK was under a legal obligation to report these transactions.

114. Notwithstanding its legal obligation to report the suspicious transactions at issue, CHASE BANK failed to do so.

115. CHASE BANK and its employees and agents had actual knowledge that the above transactions were fraudulent or due to exploitation and they failed to comply with Florida Adult Protective Services Act Statute §415.111(1).

116. CHASE BANK breached its statutory duty and their duty to Plaintiff by permitting a series of uncharacteristic and plainly suspicious transactions to proceed despite Plaintiff's age, protected status, and the obviously suspicious nature of the subject transactions.

117. As a direct and proximate result of CHASE BANK's negligence, Plaintiff sustained many hundreds of thousands of dollars in financial loss, plus tax liability, other incidental damages, and personal injury.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

118. Plaintiff repeats and realleges paragraphs 1 through 106 as if fully set forth herein.

119. CHASE BANK owed a fiduciary duty to Plaintiff based on its knowledge of the elder fraud and exploitation epidemic in the United States, by virtue of their advertising as an industry leader in the prevention of elder fraud, the Plaintiff's age, the Plaintiff's long-standing business relationship with the Defendants, including her modest banking history, and the plainly suspicious appearance of the above described withdrawals.

120.    CHASE BANK offered Plaintiff greater services, access, attention and security in exchange for entrusting the bank with higher sums of her money, first in a Checking Plus account and later as a Chase Private Client.

121.    CHASE BANK entices customers, including Plaintiff, to deposit greater amounts of money by offering greater services, access, attention and security to customers who exceed certain dollar thresholds deposited.

122.    CHASE BANK owed Plaintiff a fiduciary duty because it represented to Plaintiff that she and her account(s) were subject to heightened service, attention and security, in comparison to regular CHASE BANK customers, as a Chase Private Client.

123.    In part, due to CHASE BANK's assurances and representations, Plaintiff ultimately deposited more than $1,000,000 with CHASE BANK.

124.    CHASE BANK accepted Plaintiff's trust and confidence, and accepted Plaintiff's deposits which it actively sought out, in excess of $1,000,000.

125.    CHASE BANK stood to, and did, profit by turning a blind eye to the suspicious financial transactions at issue, because Plaintiff continued to bank with CHASE BANK and to maintain over $1,000,000 at the bank in various accounts.

126.    As with all customers, CHASE BANK was able to invest the money in Plaintiff's accounts while it held them and to make money on Plaintiff's money, because it paid Plaintiff less in interest then it earned on its investments of the money in her account(s).

127.    At all times relevant hereto, CHASE BANK had and has acute knowledge of the precise type of financial scam that Plaintiff fell victim to, and such knowledge was peculiarly within its knowledge as a highly-regulated sophisticated financial institution.

128.    Contrary to CHASE BANK, Plaintiff was unaware of the general existence of the type of financial scam that she ultimately fell victim to, or to the fact that she was being scammed as the financial scam was ongoing.

129.    CHASE BANK, through its personnel and fraud detection systems had actual knowledge that Plaintiff was likely the victim of a financial scam.

130.    CHASE BANK breached its fiduciary duty to Plaintiff by failing to act in Plaintiff's best interest, failing to question or report this obviously suspicious activity, and failing to take action as to these transactions despite its knowledge that these withdrawals were suspicious and despite its representations to Plaintiff that she would be given a higher degree of service and security if she maintained higher balances with CHASE BANK.

131.    As a result of CHASE BANK's breach of fiduciary duty to Plaintiff, Plaintiff suffered significant monetary losses and emotional distress.

### THIRD CAUSE OF ACTION
### NEGLIGENT SUPERVISION

132.    Plaintiff repeats and realleges paragraphs 1 through 106 as if fully set forth herein.

133.    CHASE BANK had a duty to supervise its employees, educate them as to their internal fraud prevention measures and ensure that such internal fraud prevention procedures were enforced.

133.    CHASE BANK had a duty to properly hire, train, supervise, and monitor the conduct of its employees who were responsible for safeguarding Plaintiff's funds.

134.    CHASE BANK employed individuals who personally interacted with Plaintiff and facilitated the fraudulent/suspicious transactions, including JOHN AND JANE DOE EMPLOYEES 1-10.

135.    In addition, Defendants JOHN AND JANE DOE EMPLOYEES 1-10, whose names and identities are currently unknown, but who were acting as agents, employees, officers, or representatives of CHASE BANK, also processed, approved, and/or failed to intervene in connection with the suspicious and irregular transactions as described herein.

136.    These individuals had direct knowledge of Plaintiff's age and modest banking history at the time that they processed the suspicious transactions at issue and thereafter.

137.    They had knowledge of her unique susceptibility to elder financial exploitation and/or elder fraud, and they had knowledge that Plaintiff was repeatedly making withdrawals from the account that were induced by the very frauds as described on the CHASE BANK website.

138.    Moreover, CHASE BANK was acutely aware—due to its real-time transaction monitoring—both of the suspicious nature of the transactions at issue and the fact that Defendants JOHN AND JANE DOE EMPLOYEES 1-10 failed to stop or report same, in contravention of CHASE BANK's stated policies and procedures.

139.    CHASE BANK's knowledge in this regard placed it on actual notice of the unfitness of Defendants JOHN AND JANE DOE EMPLOYEES 1-10.

140.    Despite this knowledge, CHASE BANK failed to investigate or take any corrective action or to counsel its employees or to suspend or remove them so that further suspicious transactions would not occur.

141.    CHASE BANK negligently failed to train, monitor, and discipline staff in accordance with institutional policy and applicable standards of care, directly contributing to Plaintiff's injuries sustained.

142.    CHASE BANK's failure to investigate and/or take corrective action after receiving notice of its employee's unfitness was unreasonable.

21

143.     Despite this knowledge, CHASE BANK failed to escalate, intervene, delay or report any of the transactions all in violation of CHASE BANK's own rules and procedures relating to elder financial exploitation/fraud and anti-money laundering (AML), and in violation of Florida law.

144.     Such failure to supervise permitted unreasonable and fraudulent transactions to be processed without alerting the Central Abuse Hotline, halting the transactions, or initiating significant enough internal fraud reviews.

145.     As a direct result of CHASE BANK's negligent supervision, Plaintiff sustained damages that exceed the jurisdictional limits of all other courts that would otherwise have jurisdiction.

**WHEREFORE**, Plaintiff respectfully demands judgment against JPMORGAN CHASE BANK, N.A., d/b/a CHASE BANK, as follows:

a.  Compensatory damages in an amount to be determined at trial;
b.  Punitive damages in an amount to be determined at trial;
c.  Consequential and incidental damages, including related tax liability and penalties;
d.  Pre- and post-judgment interest as permitted by law;
e.  Costs and disbursements of this action; and
f.  Such other and further relief as this Court may deem just and proper.

Respectfully submitted this 12th day of January 2026.

/s/  *Andrew R. Frisch*
Andrew R. Frisch, Esq.
Morgan & Morgan, P.A.
8151 Peters Road, Suite 4000
Plantation, FL 33324
T: (954) 318-0268
F: (954) 327-3013
E: afrisch@forthepeople.com

-and-

Robert W. Georges, Esq.*
Konta Georges & Buza P.C.
The Woolworth Building

22

233 Broadway, Suite 701
New York, New York 10279
T: (212) 710-5166
F: (212) 710-5162
E: rgeorges@kontageorges.com

\* Pro Hac Vice forthcoming

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been furnished to the Clerk of the Court via the CM/ECF System, this 12th day of January 2026, which I understand will send notice of same to all Parties and counsel of record.

*/s/ Andrew R. Frisch*
Andrew R. Frisch, Esq.