UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

OLGA PONOROVSKY,

       Plaintiff,                            Case No.: 0:25-cv-62640-RS

v.

JPMORGAN CHASE BANK, N.A., *et al.,*

       Defendants.

_____/

**<ins>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [D.E. 7]</ins>**

Defendant, JPMorgan Chase Bank, N.A. ("Defendant" or "Chase") contends that Plaintiff's Amended Complaint fails to allege a claim on which relief can be granted. Specifically, Defendant asserts that: (1) Plaintiff has failed to sufficiently allege a claim for negligence; (2) Plaintiff's claims are barred by the independent tort doctrine; (3) Count II fails because there is no fiduciary relationship between Chase and Ponorovsky; and/or (4) that Count III fails because "Plaintiff has not alleged Defendant knew its employees were unfit, and the employees were otherwise acting within their scope of employment." *See* D.E. 7, generally. Defendant's contentions, predicated on a selective reading of Plaintiff's allegations and misstatement of applicable law miss their mark.

Contrary to Defendant's conclusory assertions, numerous courts have held that allegations starkly similar to those at bar sufficiently state a claim for negligence on behalf of a vulnerable elderly customer against a banking institution like Chase. *See, e.g., Regan v. Bank of America, N.A.*, 2023 WL 12205530, *6-8 (S.D. Fla. Sept 27, 2023) (Cannon, J.) (denying motion dismiss where complaint premised on bank's failure to report suspicious transactions involving accounts of a vulnerable adult); *Ginder v. Bank of Am. Corp.*, No. 6:14-CV-1271-ORL-40, 2015 WL 898595, at *2–4 (M.D. Fla. Mar. 3, 2015) (same). Here, as in *Regan* and *Ginder*, Plaintiff's Amended Complaint alleges that: (1) Defendant owed a standard duty of care to Ponorovsky, a vulnerable adult, under Fla. Stat. § 415.101, *et seq.*, the Florida Adult Protective Services Act

1

("FAPSA"); (2) Defendant knew or should have known that Ponorovsky was being exploited based on uncharacteristically large withdrawals of money and its own internal reporting systems and mechanisms; (3) Defendant was required to report such exploitation; (4) Defendant's failure to report the exploitation constituted a breach of the duty of care; and (5) Plaintiff suffered damages as a result. Thus, as in *Regan* and *Ginder*, Plaintiff has adequately stated a claim for negligence and Defendant's Motion is due to be denied.

Further, the independent tort doctrine is inapplicable here, because: (1) the DAAs are not properly considered inasmuch as the Amended Complaint does not attach or reference the DAA and does not rely upon same for its allegations and they are unauthenticated hearsay; and (2) Plaintiff's claims are based on statutory and common law duties independent of any rights or obligations arising from the DAA.

Similarly, Defendant' argument that Plaintiff has not alleged a fiduciary relationship between the parties fails.  Defendant's reliance on cases regarding the "usual debtor-creditor relationship" [D.E. 7 at 15] is unavailing.  Defendant admits that in certain circumstances a fiduciary relationship may exist.  Here, Chase convinced Ponorovsky to increase her account holdings at Chase, for its financial benefit, based on representations that Ponorovsky would receive enhanced bank services and fraud protection. Moreover, Chase had actual knowledge of the fraudulent/exploitative nature of the transactions at issue and allowed them to proceed unabated nonetheless. Under these circumstances, Chase had a fiduciary duty to Plaintiff and breached same.

Finally, Defendant contends that Plaintiff has failed to adequately allege a negligent supervision claim.  However, Plaintiff has adequately alleged that: (1) Chase knew its employees were unfit; (2) Chase failed to take corrective action after receiving notice of their unfitness; (3) the employees were acting outside the scope of their employment because they failed markedly to abide by Chase's procedures and processes; and (4) Plaintiff was damaged as a result.

For these reasons, Defendant's Motion is due to be denied.

2

## RELEVANT FACTS AND ALLEGATIONS

Olga Ponorovsky, age 80, is a retired widower whose mental faculties have declined significantly due to her age such that she is dependent on others for assistance with her basic day-to-day living needs. *See* D.E. 4 at ¶4.  Ponorovsky cannot live alone safely; needs assistance with basic administrative and personal tasks; has declining hand-eye coordination and skills; has declining cognitive abilities; has issues with basic short-term and long-term memory and recall; and is emotionally vulnerable.  *Id*. at ¶ 5.  As the result of the infirmities of aging, Ponorovsky was unable to recognize that she was the victim of a well-known financial scam, largely targeting seniors due to their infirmities.  *Id*. at ¶ 7.

The suspicious cash withdrawals at issue were made by Plaintiff at a single Chase location.  *Id*. at ¶ 26.  These thirty (30) high-risk and suspicious cash withdrawals, including individual withdrawals of $100,000.00, $149,000.00, and $210,000.00, totaled over $1.3 million dollars.  *Id*. at ¶ 32-33.  Defendant's internal systems flagged each of the withdrawals as "suspicious" before, during and after processing them.  *Id*. at ¶ 34.  Despite knowing and suspecting these withdrawals were the result of elder financial exploitation, Defendants failed to alert Plaintiff or the Central Abuse Hotline regarding any of these obviously suspicious transactions.  *Id*. at ¶ 38.

When these withdrawals were made, Plaintiff was an elderly "vulnerable adult" and thus a member of the protected class set forth in Florida Adult Protective Services Act Statute §415.111. *Id*. at ¶ 109.  Plaintiff was also a "specified adult" as defined by Fla. Stats. §414.10341(1)(c).  *Id*. at ¶ 110.  Defendant was aware that Plaintiff, when making these withdrawals, was a "vulnerable adult" and a "specified adult." *Id*. at ¶ 10-11.  Defendant and its employees and agents had actual knowledge Plaintiff's withdrawals were due to exploitation or fraud and they failed to comply with §415.111(1). *Id*. at ¶ 115.

In response to the epidemic of elder financial exploitation, Defendant advertises they are aware of the problem and that they are taking steps to protect their elderly clients' money and assets.  *Id*. at ¶ 46.  Defendant specifically represented to Plaintiff that she and her accounts were getting heightened service,

attention and security, in comparison to regular Chase customers because she was a Chase Private Client. *Id*. at ¶ 122.

Defendant employed individuals who personally interacted with Plaintiff and facilitated the fraudulent/suspicious withdrawals. *Id*. at ¶ 134. These individuals had direct knowledge of Plaintiff's advanced age and modest banking history at the time they processed the suspicious withdrawals, including her unique susceptibility to elder fraud exploitation. *Id*. at ¶ 136-137. Despite this knowledge, Defendant failed to escalate, intervene, delay or report any of Plaintiff's transactions in violation of Defendant's own rules and procedures and in violation of Florida law. *Id*. at ¶ 143.

## APPLICABLE LAW AND ARGUMENT[1]

**I.** **The Amended Complaint Adequately Alleges a Claim for Negligence.**

**A.** **Plaintiff Adequately Alleges a Claim for Negligence, Based on Chase's Breach of Its Statutory Duty to Report Under FAPSA.**

In Count I of the Amended Complaint, Plaintiff asserts a negligence claim against Defendant [D.E. 7 at ¶¶ 107-117]. Specifically, Plaintiff asserts that Defendant had a duty under FAPSA to report that Ponorovsky, a vulnerable adult, was being exploited to the central abuse hotline maintained by DCF, Defendant breached its duty, because it failed to do so notwithstanding its knowledge or reasonable cause to suspect that Ponorovsky was being exploited, and as a result, Plaintiff sustained over a million dollars in financial loss. These allegations sufficiently allege a claim for negligence. *Regan; Ginder, supra*. While Chase attempts to recast Plaintiff's negligence claim as one predicated on a generalized duty to protect from fraud or to monitor Plaintiff's accounts [D.E. 7 at 9-11], Chase is boxing a shadow, because Plaintiff makes no such claim here.

---

[1] Defendants move to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. In considering a motion to dismiss, the Court must accept plaintiff's allegations as true and construe the complaint in his favor. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).

"The elements of a negligence cause of action are duty, breach, causation, and damages." *Miller By & Through Miller v. Foster*, 686 So. 2d 783, 783 (Fla. Dist. Ct. App. 1997) (citing *Paterson v. Deeb*, 472 So. 2d 1210, 1214 (Fla. Dist. Ct. App. 1985), *review denied*, 484 So. 2d 8 (Fla. 1986)).

Although Florida law does not generally impose a duty on a party to act for the benefit of another, a legal duty still may arise from "legislative enactments or administration regulations." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). "Florida courts permit proof of a statutory violation to serve as prima facie evidence of negligence because 'the standard of conduct or care embraced within such [a] legislative measure[ ] ... represent[s] a standard of at least reasonable care which should be adhered to in the performance of any given activity.' " *Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. Dist. Ct. App. 2014) (quoting *Dusine v. Golden Shores Convalescent Ctr., Inc.*, 249 So. 2d 40, 41–42 (Fla. Dist. Ct. App. 1971)). "Although proof of a statutory violation will not overhaul the negligence cause of action by converting it into a case sounding in negligence per se, Florida courts do allow the showing of a statutory violation to establish the existence of a duty and a breach thereof." *Id.*

Consistent with this well-settled black-letter law, courts have repeatedly held that a bank's violation of the mandatory reporting duty imposed by FAPSA can establish the existence of a duty and a breach thereof, supporting a claim for negligence under the circumstances at bar. *Regan,* at *8 (holding that negligence claim can be predicated on mandatory reporting duty created by FAPSA and breach thereof)*; Ginder,* at *3 ("Because Florida courts allow the inference of the breach of a legal duty from the violation of a statute, the Court may look to the [Florida Adult Protective Services] Act in answering whether BOA had a legal duty to Plaintiff."); *Arberman v. PNC Bank, Nat'l Ass'n,* No. 22-80983-CIV, 2022 WL 18402402, at *2 (S.D. Fla. Dec. 19, 2022), *aff'd,* 2023 WL 3910573 (11th Cir. June 9, 2023) ("While Florida courts have held that FAPSA does not create a private cause of action against mandatory reporters, a plaintiff may pursue a common law negligence claim based on a statutorily created duty, even if that statute does not itself create a private cause of action.") (internal citations omitted).

The relevant portion of FAPSA applicable to this case states as follows: "any ... [b]ank, savings and loan, or credit union officer, trustee, or employee ... who knows, or has reasonable cause to suspect, that a vulnerable adult has been or is being abused, neglected, or exploited must immediately report such knowledge or suspicion to the central abuse hotline." Fla. Stat. § 415.1034(1).

Here, Defendant argues that it did not have a duty under FAPSA to report the exploitation of Ponorovsky, for three reasons: (1) Plaintiff has not alleged she was "exploited" under FAPSA; (2) Plaintiff has not alleged that Chase had sufficient knowledge of the exploitation to trigger its reporting obligations under FAPSA; and (3) Plaintiff fails to allege that she is a "vulnerable adult" under FAPSA.  As further discussed below, the allegations in the Amended Complaint meet or exceed that which other courts have repeatedly held sufficiently allege a negligence claim based on bank's failure to report exploitation of a vulnerable elderly adult under FAPSA.  Thus, Defendant's Motion is due to be denied with respect to Plaintiff's negligence count.

### 1.  Plaintiff Adequately Alleges That She Was Exploited Under FAPSA.

Defendant contends that Plaintiff has failed to allege that she was exploited under FAPSA. D.E. 7 at 4.  In making this argument, Defendant appears to ignore the clear language of the statute itself, as well as the allegations of the Amended Complaint.

In relevant part, FAPSA provides :

(8)(a)    "Exploitation" means a person who:

1.    Stands in a position of trust and confidence with a vulnerable adult and knowingly, by deception or intimidation, obtains or uses, or endeavors to obtain or use, a vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive a vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult; or…[2]

(b)    "Exploitation" may include, but is not limited to:

2.    Unauthorized taking of personal assets;

---

[2] The statute is in the disjunctive so discussion of (8)(a)(2) is superfluous here.

3.   Misappropriation, misuse, or transfer of moneys belonging to a vulnerable adult from a personal or joint account…

As Defendant acknowledges, "position of trust and confidence" referenced in Section (8)(a), includes "any other person who has been entrusted with or has assumed responsibility for the use or management of the vulnerable adult's funds, assets, or property." Fla. Stat. § 415.102(19)(d).  Here, the Amended Complaint alleges that Ponorovsky was victimized by a scam "described on CHASE BANK's website, [in which] scammers befriend the victim online and begin a relationship where they gain the victim's trust.  After a period of time, the scammers get the victim to invest a small amount of money in what appears to be a legitimate investment.  The scammers then continually increase the amount of the 'investments' before they ultimately 'take the money and disappear." D.E. 4 ¶54; *see also id*. ¶¶ 69-71 (third-party actors built a relationship of trust and confidence with Ponorovsky, leading her to believe she was investing her funds with them, with promises of returns that never occurred). These allegations sufficiently allege that Plaintiff was exploited within the meaning of FAPSA.

Defendant's citation to the unreported decision of *Arberman v. PNC Bank, Nat'l Ass'n* is misplaced. No. 23-10182, 2023 WL 3910573 (11th Cir. June 9, 2023).[3]  In *Arberman*, the plaintiff " 'was contacted by a fraudster who falsely claimed to be a federal law enforcement officer.' The unknown fraudster ("Doe") told Arberman 'that her bank account had been compromised' and that Arberman 'must assist federal law enforcement in apprehending the criminal.' Doe also told Arberman that if she refused to assist him, she would be investigated as an accomplice to the fraud." *Arberman*, at *1.  Based on these allegations, the Eleventh Circuit held the plaintiff had failed to allege she was exploited under FAPSA, because a law

---

[3] Defendant contends that unreported "[p]er curiam opinions issued by the Eleventh Circuit hold precedential value." D.E. 7 at 2, fn 1.  To the contrary, unpublished opinions are not considered binding precedent. 11th Cir. R. 36-2; *U.S. v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) ("Unpublished opinions are not binding precedent."). Rather, "they may be cited as persuasive authority." 11th Cir. R. 36-2, I.O.P. 6. Such unpublished opinions are "persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc*., 487 F.3d 1340, 1345 n. 7 (11th Cir. 2007); *see also In re Hamilton,* 635 B.R. 877, 890 (Bankr. S.D. Ga. 2022) (declining to follow per curiam decision as unpersuasive).

Case 0:25-cv-62640-RS   Document 11   Entered on FLSD Docket 03/02/2026   Page 8 of 20

enforcement officer was not a "position of trust and confidence" as defined by the statute.  *Id*. at *5.  Unlike the police officer threatening the Arberman with investigation/prosecution in the event of non-cooperation, here Ponorovsky alleges that she believed she was entrusting her assets to legitimate money/investment managers, who fit cleanly within FAPSA's definition of a "position of trust and confidence."  Defendant's citation to *Veillon Rushmore Loan Mgmt. Servs.*  is likewise unavailing. 2025 WL 1213856, at *3 (N.D. Fla. Mar. 4, 2025), *report and recommendation adopted,* 2025 WL 1208024 (N.D. Fla. Apr. 25, 2025) (lender who allegedly offered pro se plaintiff a predatory loan modification and demanded a $24,000 payment as a condition to letting her sell her home did not stand in a "position of trust and confidence").

### 2.  Ponorovsky Adequately Alleges That Chase Knew or Had Reasonable Cause to Suspect That Ponorovsky Was Being Exploited.

Chase next contends that "Plaintiff has not plausibly alleged that Chase had actual knowledge that Plaintiff was being exploited as a result of her age."  In making its argument, Chase misstates the applicable law, urges the Court to apply an incorrect heightened pleading burden and fails to cite all of the relevant allegations in the Amended Complaint.  Applying the correct legal standard to the well-pled allegations of the Amended Complaint, Plaintiff easily exceeds her pleading burden here.

The relevant provision of FAPSA provides:

> Any … Bank, savings and loan, or credit union officer, trustee, or employee … who knows, **or has reasonable cause to suspect**, that a vulnerable adult has been or is being abused, neglected, or exploited must immediately report such knowledge **or suspicion** to the central abuse hotline.

Fla. Stat. §§ 415.1034(1)(a)(8) and (9) (emphasis added).

Here the Amended Complaint alleges that Chase was aware that Ponorovsky was a "vulnerable adult" (D.E. 4 ¶ 10); Chase was well-aware of the precise elder exploitation scam that Ponorovsky was victimized by (*see id*. ¶¶ 48, 53-54, 68); Chase maintains policies and procedures to detect and prevent elder fraud scams, like the one here (*see id*. ¶ 27); each transaction was suspicious on its face, and taken together the transactions at issue demonstrated a pattern that was well-known by Chase to constitute elder

exploitation (*see id*. ¶¶ 58, 60-62, 68); Chase uses a combination of behavior analytics, real-time transaction monitoring and machine learning to identify anomalies in customer activities and analyzes data points like transaction history, location and device information to build customer profiles and automatically flag deviations (*see id*. ¶¶ 27, 66-67); Chase's internal systems flagged each of the transactions at issue as "suspicious" before, during and after it processed each of the transactions (*see id*. ¶¶ 34, 58); Chase had actual knowledge (or reasonable cause to suspect) that the transactions were suspicious because its systems flagged them as such (*see id*. ¶¶ 35-36, 57-58, 60); and despite knowing and suspecting that the transactions were the result of elder financial exploitation, Chase failed to report same to Ponorovsky or the Central Abuse Hotline (*see id*. ¶¶ 38, 59, 106).

The cases cited by Chase do not support the notion that the Amended Complaint's allegations are insufficient.  *See* D.E. 7 at 6-7, citing *Arberman*, 2023 WL 3910573 (alleged "out of the ordinary" transactions alone without allegation bank was aware of plaintiff's age insufficient); *Goodwin as trustee of Dorothy M. Goodwin Tr. v. JP Morgan Chase Bank, N.A*., 2024 WL 1673363, at *3 (D.N.J. Apr. 18, 2024) (allegation that plaintiff previously reported fraudulent debit card usage, which resulted in cancellation of debit card and issuance of new one, insufficient to allege that defendant had knowledge or reasonable cause to believe there was an ongoing fraud); *Bahmann v. N.A*., 2023 WL 5573820, at *4 (M.D. Fla. Aug. 29, 2023) (mere allegation that defendant failed to employ methods or policies to safeguard plaintiff from scams, without allegation of requisite knowledge insufficient).

Taken together with the other allegations in the Amended Complaint, Ponorovsky easily exceeds her lenient pleading burden alleging that Chase knew or had reasonable cause to suspect that Plaintiff was the victim of an elder exploitation scam well-known to Chase.

### 3.  Ponorovsky Adequately Alleges She is "Vulnerable Adult" Under FAPSA.

Chase also presents a partial definition of "vulnerable adult" and attempts to mischaracterize the Amended Complaint's factual allegations regarding same, in an attempt to argue that the Amended

9

Complaint fails to adequately allege that Ponorovsky is a "vulnerable adult."  Chase's arguments fall flat based on the full statutory definition and the detailed factual allegations in the Amended Complaint.

Pursuant to FAPSA, "[v]ulnerable adult" means a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging."  Fla. Stat. § 415.102(28).

The Amended Complaint alleges that Plaintiff is a retired widower, whose mental faculties have declined significantly due to her age such that she is dependent on others for assistance with her basic day-to-day living needs and that her ability to provide for her own protection is impaired due to the infirmities of aging.  D.E. 4 ¶¶ 4-6.  Specifically, the Amended Complaint alleges that Plaintiff cannot live alone safely; needs assistance with basic administrative and personal tasks; has declining hand-eye coordination and skills; has declining cognitive abilities; has issues with short-term and long-term memory and recall; and is emotionally vulnerable.  *Id*. ¶ 5.  These infirmities of aging, the Amended Complaint alleges, have rendered Ponorovsky more trusting and less pensive than other members of the community and thus unable to protect herself from the type of financial scam/harm that she ultimately fell victim to.  *Id*. ¶ 8.  As a result of the infirmities of aging, the Amended Complaint further alleges that Ponorovsky was unable to recognize that she was the victim of a well-known financial scam, largely targeting seniors similarly infirm due to their advanced age and infirmity and that a non-vulnerable adult would not have fallen victim to the obvious financial scam that Plaintiff was victimized by.  *Id*. ¶¶ 7, 9.  These allegations, taken together far exceed Plaintiff's low pleading burden at this stage.  *Arberman*, at *5 ("[Plaintiff] plausibly alleged that her ability to perform the tasks of daily life had been impaired by the infirmities of aging. Far from rephrasing the statutory language, Arberman pointed to concrete symptoms and issues related to her advanced age.").[4]

---

[4] In *Arberman*, plaintiff alleged: (1) she was 71 years old at the time of the fraud; (2) she suffered the cognitive and physical decline consistent with that of an aging individual; (3) she is less confident in her decision-making abilities; (4)

None of the cases cited by Chase hold otherwise.  Instead, the cases cited by Chase stand for the unremarkable proposition that regurgitating the statutory language alone is insufficient and/or that plaintiff was old and unsophisticated fail to adequately allege "vulnerable adult" status.  *See* D.E. 7 at 7-8.  To the extent any of the cases concern factual allegations beyond the statutory language alone, such cases concerned factual allegations that pale in comparison to those at bar.  *See, e.g., Veillon*, 2025 WL 1213856, at *3 (finding allegations that plaintiff was old and financially unsophisticated insufficient to meet the definition of a "vulnerable adult"); *Shave v. Stanford Coins & Bullions, Inc.*, 2009 WL 1748084, at *4 (S.D. Fla. June 19, 2009) (finding allegation that plaintiff was "a 70 year old retired widower with limited income, education and investment experience" failed to establish he was a vulnerable adult under FAPSA); *Krinsk v. SunTrust Banks, Inc.*, 2010 WL 11475608, at *2 (M.D. Fla. Jan. 8, 2010) (finding allegation that plaintiff was "vulnerable due to the infirmities of aging" failed to establish she was vulnerable adult because she did not allege "facts related to the essential statutory elements, namely, that she cannot 'perform the normal activities of daily living' or 'provide for [ ] her own care' ").

**B.      Plaintiff's Negligence Claim is Not Prefaced on a Generalized Duty to Protect Plaintiff from Fraud or to Monitor Plaintiff's Accounts.**

Chase separately contends that Plaintiff's "negligence claim fails because Chase does not have a duty to protect Plaintiff from fraud or monitor Plaintiff's accounts."  D.E. 7 at 9. Chase cites *Arberman* for this proposition, which it contends is "controlling" notwithstanding the fact that *Arberman* is an unreported decision which lacks precedential value and *Arberman* concerned materially different facts than those alleged here. Moreover, Plaintiff's claim is not premised on an alleged duty to investigate or monitor transactions and/or a failure to discharge such a duty.  Rather, Plaintiff alleges that Chase *did* monitor her transactions and had knowledge or reasonable belief that Plaintiff was the victim of exploitation but failed to act in accordance with

---

she would not have fallen victim to this fraud at a younger age; and (5) her ability to provide for her own care or protection was impaired due to the infirmities of aging, namely cognitive decline.  *See id*.

11

both FAPSA and its common law duties armed with such knowledge.  For this reason, the Amended Complaint states a claim for negligence, independent of Chase's duty and breach of same under FAPSA.

Chase spills much ink arguing that "[t]his case is controlled by … *Arberman*." Chase is wrong. *Arberman* is an **unreported** decision, which lacks any precedential value.  *See* FN 2, *infra*.  Unsurprisingly, the sole case Chase cites for the proposition that per curiam decisions are precedential, simply noted that it was bound by a **reported** Eleventh Circuit opinion, notwithstanding the fact that it was a per curiam decision. *See Arias v. Chertoff,* 2007 WL 9709834, at *2 (S.D. Fla. Aug. 22, 2007), citing *Castro v. Secretary of Homeland Sec.,* 472 F.3d 1334 (11th Cir. 2006).  Furthermore, the allegations of the Amended Complaint here are materially different than those alleged in *Arberman*, such that *Arberman* is entirely unpersuasive.

Whereas the plaintiff in *Arberman* alleged that the defendant failed to flag the transactions at issue as suspicious for fraud (*see id*., at *2), here the Amended Complaint alleges that Chase undertook the task of discovery of the fraudulent activity, the transactions at issue **were** detected by Chase as suspicious, **Chase had actual knowledge** of the suspicious nature of the transactions as a result, and that Chase nonetheless failed to alert Ponorovsky or the central abuse hotline regarding the obviously suspicious transactions and failed to take reasonable steps to protect Ponorovsky armed with this knowledge. D.E. 4 ¶¶ 34-35, 38, 46, 55-67, 102-106.  These facts, taken as true, adequately allege both a duty and a breach of that duty.  *See Ginder v. Bank of Am. Corp.,* 2015 WL 898595, at *3–4; *Chang v. JPMorgan Chase Bank, N.A.,* 845 F.3d 1087, 1098 (11th Cir. 2017) ("[B]anks do have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled").

In *Ginder*, the court considered a nearly identical argument from a banking defendant and distinguished that case from the case law cited by Chase, explaining:

> Even if the Court were not to look to [FAPSA] in answering the question of duty, the Court finds that the general facts of this case warrant the reasonable inference that BOA breached a duty of care to Plaintiff. *See Janis,* 370 F.Supp.2d at 1229. A duty may arise wherever an actor recognizes that his conduct involves a risk of harm to another. Restatement (Second) of Torts § 289 (1965). The ability of the actor to recognize that his conduct creates a risk of harm is judged according to a

reasonableness standard or, if the actor exhibits "superior attention, perception, memory, knowledge, intelligence, and judgment," then his ability is judged according to those superior abilities. *Id.* § 289(a)-(b).

BOA undertook the task of discovering the fraudulent activity perpetrated against Plaintiff, but failed to notify Plaintiff or to take any other action to protect against the fraudulent activity despite BOA's knowledge. Further, it is reasonable to infer that BOA, acting as Plaintiff's financial institution, had superior attention, perception, knowledge, intelligence, and judgment in recognizing the risk of not notifying Plaintiff of potentially fraudulent activity or failing to act to prevent future fraudulent activity, especially in light of BOA's numerous Suspicious Activity Reports. Accordingly, the Court is able to reasonably infer under the circumstances of this case that BOA created in itself a duty of care to Plaintiff upon learning of her exploitation and breached that duty by failing to notify Plaintiff of its investigations and by failing to act to prevent future fraud despite its knowledge thereof. For these reasons, BOA's motion to dismiss will be denied as to Count 1.

Here, as in *Ginder*, the Amended Complaint adequately alleges that Chase undertook the task of discovering fraudulent activity perpetrated against Plaintiff, but failed to notify Plaintiff or take any other action against the fraudulent activity despite its superior knowledge and savvy. Respectfully, the same result as *Ginder* should logically follow as well.

## II.       The Independent Tort Doctrine Has No Application Here.

Chase has failed to demonstrate that the independent tort doctrine bars the counts alleged in the Amended Complaint. Because the Amended Complaint asserts no claim for breach of contract, does not reference the DAA, Chase's argument premised on an unauthenticated document outside the four corners of the Amended Complaint is foreclosed. Even if the Court were inclined to consider it however, Plaintiff's claims for negligence, breach of fiduciary duty and negligent supervision arise from duties separate and distinct from any duty created by the DAA. For each of these reasons, the independent tort doctrine does not bar Plaintiff's claims.

### A.       Any Argument Founded on the DAA is Improperly Before the Court.

When analyzing a motion to dismiss under Rule 12(b)(6), courts ordinarily "do not consider anything beyond the face of the complaint and documents attached thereto." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1281 (11th Cir. 2007). There is an exception to this rule where "a plaintiff refers to a document

in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Id.*, citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999). Here, the exception is inapplicable, because the Amended Complaint does not reference the DAA, no fact or theory is premised on the DAA, the unauthenticated DAAs are hearsay[5], and Plaintiff's claims are based on duties entirely separate apart and distinct from the DAA. Thus, the DAA and Chase's arguments reliant on same are not properly before the Court in the context of Chase's 12(b)(6) Motion. *Fin. Sec. Assur., Inc., supra.*

> **B.      Plaintiff's Claims Are Independent of Chase's Acts That Could Have Breached the DAA.**

Even to the extent the Court considers Chase's arguments improperly founded on the DAA, Plaintiff's claims are independent of Chase's acts that could have breached the DAA. To that end, the Amended Complaint alleges that Chase breached its duty under FAPSA and/or that it breached the duty created when it undertook to detect fraud and in fact detected fraud with regard to Plaintiff's account. *See* Section I, *infra.* Such duties are entirely independent of any obligations that Chase may have breached under the DAA, and the mere existence of the DAA is irrelevant. As such, Chase's reliance on the independent tort doctrine is without basis. The independent tort doctrine does not bar claims where the plaintiff alleges conduct independent from acts that breach the contract, and do not in and of themselves constitute a breach of the contract. *XP Glob. Inc. v. AVM, L.P.*, No. 16-cv-80905-BLOOM/Valle, 2016 WL 4987618, at *4 (S.D. Fla. Sept. 19, 2016). "A plaintiff may maintain side-by-side negligence and contract claims based on the same underlying acts if those acts violate a legal duty independent of obligations imposed by the contract."

---

[5] The DAA is unauthenticated hearsay and should not be considered by the Court. *See Walker v. Fed. Nat'l Mortg. Ass'n,* 2014 WL 12069852, at *5 (N.D. Ga. Dec. 19, 2014) ("Plaintiff correctly contends that the unauthenticated notice of default and acceleration submitted by Seterus is not properly before the Court, and therefore, it will not be considered in ruling on the pending motion to dismiss."). Furthermore, there is no evidence that the DAAs were communicated to Plaintiff.

*Remington v. Newbridge Sec. Corp.*, No. 13-60384-CIV, 2014 WL 505153, at *11 (S.D. Fla. Feb. 7, 2014);

*HTP, Ltd. v. Lineas Aereas Costarricenses*, 685 So. 2d 1238, 1239 (Fla. 1996) ("Where a contract exists, a

tort action will lie for either intentional or negligent acts considered to be independent from acts that breached

the contract.").

"While the exact contours of this possible separate limitation ... are still unclear, the standard appears

to be that 'where a breach of contract is combined with some other conduct amounting to an independent

tort, the breach can be considered negligence.' " *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir.

2014) (quoting *U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc.*, 134 So. 3d 477, 480 (Fla. 2d DCA 2013)). To

determine whether a tort claim is independent from a contract claim, courts look to the source of the duty

allegedly breached:

> the distinction between a breach of contract and a tort is the source of the duty breached by the
> defendant. If a contract imposes a duty and the defendant breaches that duty, the plaintiff must sue
> for breach of contract. If society imposes the duty, the plaintiff must sue in tort. In other words, if the
> allegedly breached duty is contractual, the economic-loss rule prevents suing in tort.

*Travelers Indem. Co. of Connecticut v. Richard McKenzie & Sons, Inc.*, 326 F. Supp. 3d 1332, 1345-46 n.10

(M.D. Fla. 2018), *aff'd*, 10 F.4th 1255 (11th Cir. 2021).

Here, Chase fails to identify any alleged breach of the DAA implicated by the allegations in the

Amended Complaint. *See* D.E. 7 at 11-14. To the contrary, Chase argues that there was no breach of the

DAA. *See id.* Logically, the claims asserted therefore cannot and do not mirror any non-existent breach of

contract claims and Plaintiff's claims are necessarily independent of such non-existent breach of contract

claims. Moreover, as discussed at length in Section I, *infra*, Plaintiff's claims are not founded on any duties

created by the DAA, but based on Chase's breach of its statutory duty to report under FAPSA and breach of

its duty to safeguard funds deposited with it when confronted with clear evidence indicating that those funds

were being mishandled.  Both of these duties are independent of any duty created by the DAA.  *See* D.E. 7

at fn 8 (acknowledging "the Amended Complaint seeks to impose duties on Chase that are not included in

15

the DAAs"); *WP Property Holdings I, LLC v. JR&CO., Inc.*, 2025 WL 4095853, at *4 (M.D. Fla. July 29, 2025) (independent tort doctrine does not bar negligence claims based upon a statutory violation); *Roop v. Prime Rate Premium Fin. Corp., Inc.*, 710 F. Supp. 3d 1165, 1176 (M.D. Fla. 2024) (Jung, J.) ("[T]he independent tort doctrine only serves to bar [ ] tort claims where the offending party has committed no breach of duty independent of a breach of its contractual obligations.") (internal quotations and citations omitted); *McAbee Constr., Inc. v. Textron Aviation Inc.,* 2024 WL 4518557, at *4 (M.D. Fla. Oct. 17, 2024) ("a negligence [ ] claim is an 'independent' or 'societal' duty that is separate from the obligations imposed by a contract [where] the duty is imposed by statute"); *see also Wistar v. Raymond James Financial Services, Inc.*, 365 F.Supp.3d 1266, 1269 (S.D. Fla. 2018).  Under these circumstances, Chase's Motion is due to be denied.

## III.      The Amended Complaint Adequately Alleges Breach of a Fiduciary Duty.

Chase next contends that the Amended Complaint fails to allege a fiduciary duty between the parties. D.E. 7 at 14-19.  Chase is wrong.  While Eleventh Circuit courts generally reject fiduciary duty claims against banks by ordinary account holders, exceptions exist where banks undertake special duties, deviate from established authorization procedures, and/or have actual knowledge of ongoing misappropriation, as here.

As a threshold matter, here Plaintiff was not an "ordinary account holder" as in the cases cited by Chase.  Rather, Plaintiff was a "Premier Plus Checking" account holder and Chase later elevated her account to a "Chase Private Client" account while the exploitation was ongoing.  D.E. 4 ¶¶ 63-65.  Plaintiff was required to maintain higher balances with Chase, in order to get these accounts and Chase represents that such account holders receive a greater level of service and fraud protection than ordinary checking account holders. *See id*. ¶¶ 120-122; *see also* https://www.chase.com/personal/checking/private-client (highlighting "priority service" and "fraud monitoring" as benefits of Chase Private Client checking). In part, due Chase's assurances in this regard, Plaintiff ultimately deposited more than $1,000,000 with Chase.  *Id*. ¶ 123. For its part, Chase benefitted from Plaintiff's larger deposit amount, because the more Plaintiff had a deposit, the more it profited. ¶¶ 125-126.

16

Moreover, where the complaint alleges that a bank had actual knowledge of fraud and failed to act, as here, Florida law is clear that same is sufficient to adequately state a claim for breach of fiduciary duty. *Gevaerts v. TD Bank, N.A.,* 56 F. Supp. 3d 1335, 1342 (S.D. Fla. 2014) (allegation that bank's internal systems detected fraud, and bank failed to report to NJ bar notwithstanding agreement to do so, sufficiently stated claim for breach of fiduciary duty) (quoting *Lesti v. Wells Fargo Bank, N.A.,* 960 F.Supp.2d 1311, 1325 (M.D. Fla. 2013) (allegation that "defendant affirmatively assist[ed], help[ed] conceal, or fail[ed] to act when required to do so, thereby enabling the breach to occur" sufficient to allege breach of fiduciary duty).  Holding that similar conduct to that alleged here was an exception to the general rule that a bank normally does not have a fiduciary duty to an ordinary account holder, the *Gevaerts* court explained:

> While it is true that some of Plaintiffs' allegations concern normal, routine banking services, Plaintiffs' allegations do encompass other activity. The crux of Plaintiffs' pertinent allegations, in the context of the aforementioned knowledge element, is that TD Bank had knowledge of the fraudulent transactions in this case because TD Bank had an agreement with the New Jersey bar to report overdrafts of attorney trust accounts. Plaintiffs' allegations on this point are partially set forth below:
>
> TD Bank knowingly permitted Peck to overdraw the Trust Accounts by honoring withdrawals and transfers from Trust Accounts with insufficient funds. TD Bank knew that such conduct was in violation of the New Jersey rules governing attorney trust accounts and detrimental to Plaintiffs and the Class members. **TD Bank also knew it was a party to an agreement requiring that it immediately report such activities to the New Jersey Bar Office of Attorney Ethics.** Nonetheless, despite its obligation to do so under its agreements and New Jersey law, TD Bank failed to timely file all appropriate reports with the New Jersey Office of Attorney Ethics.
>
> DE 37 ¶ 85. Plaintiffs' implicit contention is therefore that (i) because TD Bank had an obligation to report overdraws of attorney trust accounts to the New Jersey bar, (ii) TD Bank had systems in place to detect such overdraws for reporting purposes and (iii) due to such systems TD Bank had actual knowledge of the overdraws. The Court finds this contention to be plausible. Accordingly, the Court finds that Plaintiffs' allegations of actual knowledge satisfy the *Twombly* motion to dismiss standard.

*Gevaerts,* 56 F. Supp. 3d at 1341–42.  The allegations of the Amended Complaint here are starkly similar to those in *Gevaerts*.  The *Gevaerts* holding that a fiduciary duty was properly pled should likewise be extended here, where the Amended Complaint alleges that: (1) Chase had a statutory obligation to report the elder exploitation/fraud to the central abuse hotline under FAPSA (D.E. 7 ¶¶ 6, 10, 22-23, 32-40, 106); (2) Chase had systems in place to detect such exploitation/fraud (*id*. ¶¶ 27, 34-35, 55-58, 66-67, 106); and (3) due to

such systems Chase had actual knowledge of the exploitation/fraudulent nature of the withdrawals here (*id*. ¶¶ 32, 34-38, 57-59, 127, 129).

IV.     **The Amended Complaint Adequately Alleges Negligent Supervision Because It Alleges That Chase Knew Its Employees Were Unfit and Failed to Take Any Further Action Nonetheless.**

The Amended Complaint also adequately alleges a claim for negligent supervision despite Chase's contentions otherwise. D.E. 7 at 19-21. "Negligent supervision 'occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment.' " *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020) (quoting *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-CV-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016) (quoting *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012)). "Accordingly, Plaintiff 'must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment.' " *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 2592914, at *9 (S.D. Fla. Apr. 23, 2021) (citing *Cruz*, 842 F. Supp. 2d at 1359; (other citations omitted)).

As noted above, here the Amended Complaint alleges that Chase had actual (or constructive) notice of the fraudulent/exploitive nature of the transactions at issue, because its systems detected such exploitation/fraud in real-time (*id*. ¶¶ 27, 32, 34-38, 55-59, 66-67, 106, 127, 129, 138). Logically, each transaction that was flagged placed Chase on notice that someone in the branch had negligently processed the transaction (notwithstanding the fact that its real-time transaction monitoring identified same as suspicious for elder exploitation/fraud) and that such employees failed to comply with FAPSA and other applicable laws, Chase's internal policies and procedures, or take any other affirmative steps to prevent further exploitation/fraud. *Id*. ¶¶ 138-139, 143. Despite this knowledge, Chase failed to investigate or take any corrective action or to counsel its employees or to suspend or remove them so that no further suspicious

transactions would occur, and its failure to do so was unreasonable. *Id*. ¶ 140, 142.  These allegations are sufficient to state a claim for negligent supervision.

Chase seems to urge that no employer could ever be held responsible for the negligence of its employees and inadequate oversight of same, where the employee is alleged to have negligently performed the duties of their position. *See* D.E. 7 at 20 ("The negligent supervision claim also fails because Plaintiff has not alleged … that the employees were acting outside the scope of their employment.").  However, Chase mischaracterizes Florida law which recognizes that an employer may be held responsible for the negligent supervision of its employees where it has knowledge of their negligence and fails to take an steps to curb it. *See, e.g., Timco Aviation Servs., Inc. v. Wilson Elser Moskowitz Edelman & Dicker, LLP,* No. 11-20073-CV, 2011 WL 13223673, at \*2 (S.D. Fla. Apr. 12, 2011) (complaint stated claim for negligent supervision against law firm and supervisory attorney, where its employee negligently prepared offer of judgment).  Addressing the sufficiency of the negligent supervision claim, the *Timco* court explained:

> Defendants argue that TIMCO's negligent supervision claim is inadequately pled and should be dismissed. The Court disagrees. Plaintiff alleges that Defendants owed Plaintiff a cognizable duty of care arising out of their attorney-client relationship and that Wilson Elser and Kaplan had direct supervisory responsibility for all Wilson Elser employees. The Complaint further alleges that Wilson Elser and Kaplan knew or should have known about the preparation of the Offer of Judgment, and the contents thereof. Thus, as Plaintiff has alleged that the Offer of Judgment was negligently prepared, Wilson Elser and Kaplan knew or should have known that the Offer of Judgment was being negligently prepared. The Complaint also alleges that their failure to adequately research, draft, and otherwise act with regard to the Offer of Judgment constituted a breach of their duty to supervise. Finally, Plaintiff asserts that the violations of their duties to properly supervise were the proximate cause of the damage, consisting of Plaintiff's attorneys' fees that would have been recovered pursuant          to          a          validly          drafted          Offer          of          Judgment.

*Timco Aviation Servs., Inc.,* at \*2.  Here, as in *Timco,* Chase had a duty to ensure that it adequately supervised its employees to ensure that they complied with applicable law and Chase's own internal policies and procedures.  It was placed on actual notice that they were not by virtue of the fact that it knew that the branch employees were processing transactions that were tell-tale signs of elder exploitation and fraud.  Thus, just as in *Timco*, the Amended Complaint here adequately alleges a claim for negligent supervision.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion is due to be denied.

Dated:  March 2, 2026.

Respectfully Submitted,

**/s/ ANDREW R. FRISCH**

Andrew R. Frisch, Esquire
FL Bar No. 27777
Morgan & Morgan, P.A. 8151
Peters Road, Suite 4000
Plantation, FL 33324
Tel: (954) WORKERS
Fax: (954) 327-3013
Email: AFrisch@forthepeople.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all parties of record.

*/s/ ANDREW R. FRISCH*
Andrew R. Frisch

20