**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-62640-SMITH**

OLGA PONOROVSKY,

      Plaintiff,

v.

JPMORGAN CHASE BANK, N.A., d/b/a
CHASE BANK and JOHN AND JANE DOE
EMPLOYEES 1-10 of the above-named
institutions,

      Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant JPMorgan Chase Bank, N.A.'s ("Chase Bank") Motion to Dismiss (the "Motion") [DE 7], Plaintiff's Response [DE 11], and Defendant's Reply [DE 14]. For the following reasons, the Motion is granted in part and denied in part.

**I.      ALLEGATIONS IN THE AMENDED COMPLAINT**

Plaintiff alleges that beginning in or about September 2023 she became the victim of an elder exploitation investment scam in which third-party fraudsters built a relationship with her through online communications, persuading her to believe she was investing money with a legitimate company. She is 80 years old, and her mental faculties have declined significantly due to her age. Plaintiff cannot live alone safely, needs assistance with basic administrative and personal tasks, has declining hand-eye coordination and skills, has declining cognitive abilities, has issues with basic short-term and long-term memory and recall, and is emotionally vulnerable.

Chase Bank offered Plaintiff greater services, access, attention and security in exchange for entrusting the bank with higher sums of her money, first in a Checking Plus account and

1

later as a Chase Private Client. Chase Bank entices customers, including Plaintiff, to deposit greater amounts of money by offering greater services, access, attention and security to customers who exceed certain dollar thresholds deposited. In part, due to Chase Bank's assurances and representations, Plaintiff ultimately deposited more than $1,000,000 with Chase Bank.

Over time, the fraudsters induced her to wire increasingly large sums of money to their purported company with promises of returns that never materialized. Between November 28, 2023, and July 22, 2024, Plaintiff made approximately twenty-nine in-person withdrawals at Chase Bank's retail branch located at 1665 E. Hallandale Blvd., Hallandale Beach, Florida, each time assisted by bank employees. These withdrawals ranged from several thousand dollars to as much as $210,000 in a single transaction, with the total amount lost exceeding $1.3 million. As a result of the infirmities of aging, Plaintiff was unable to recognize that she was the victim of a well-known financial scam, largely targeting seniors similarly infirm due to their advanced age. Despite the suspicious nature of these transactions, Chase Bank and its employees failed at any point to flag, delay, or stop any of the withdrawals. Neither the bank nor its employees asked Plaintiff any questions regarding the purpose or nature of the transactions at any time throughout this period.

Chase Bank's own internal protocols and systems allegedly flagged these transactions as suspicious and consistent with elder financial exploitation and potential money laundering, providing the bank with actual knowledge that Plaintiff was a vulnerable adult being financially exploited. Notwithstanding this knowledge, Chase Bank failed to report the transactions to Florida's Central Abuse Hotline or freeze Plaintiff's account as required under Florida Statutes, section 415.101, *et seq.*

On January 12, 2026, Plaintiff filed her Complaint and Demand for Jury Trial [DE 1]. Plaintiff asserts three causes of action: (1) negligence; (2) breach of fiduciary duty; and (3)

negligent supervision against Chase Bank. On February 2, 2026, Defendant Chase Bank filed its Motion to Dismiss Plaintiff's Complaint [DE 7].

## II.   <u>LEGAL STANDARD</u>

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. *Murphy v. Fed. Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which they base their claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007).

As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). While the court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." *Id.* (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail on his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery to prove the allegations. *See Durham v. Whitney Info. Network, Inc.*, No. 06-CV-00687, 2009 WL 3783375, at *5 (M.D. Fla. Nov. 10, 2009).

## III.   <u>DISCUSSION</u>

Defendant argues that each count of the Complaint should be dismissed for several reasons. First, Plaintiff's negligence claim fails because Chase does not owe a duty to protect

Plaintiff from fraud or monitor Plaintiff's accounts. Second, the claim for breach of fiduciary duty fails because there is no fiduciary relationship between Plaintiff and Chase Bank as a matter of law, regardless of whether Plaintiff holds a Chase Private Client checking account or a basic checking account; they are both governed by the same Deposit Account Agreement ("DAA") and confer the same rights and obligations. Plaintiff's negligent supervision claim also fails as Plaintiff has not alleged (and cannot allege) (a) Chase Bank had knowledge that its employees were unfit, and/or (b) the employees were acting outside the scope of their employment. The Court addresses these arguments in turn below.

### A. Count I—Negligence

In its Motion to Dismiss, Defendant maintains that because Plaintiff has failed to plausibly allege that (a) she suffered "exploitation" as defined in the Florida Adult Protective Services Act Statute ("FAPSA") and (b) she is a "vulnerable adult" under FAPSA, Plaintiff has failed to establish that Chase Bank owed her a statutory duty under FAPSA, and the negligence claim fails.

To state a claim for negligence under Florida law, Plaintiff is required to plead four elements: (1) a duty requiring Chase Bank to conform to a certain standard of conduct; (2) a breach of that duty by Chase Bank; (3) a causal connection between the breach and an injury to Plaintiff; and (4) loss or damage to Plaintiff. *See Clay Elec. Co–op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). At issue here is the first requirement, Chase Bank's alleged duty to Plaintiff. Under Florida law, "[d]uty exists as a matter of law and is not a factual question for [a] jury to decide." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (second alteration in original) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)).

Relevant here, also under Florida law, a bank does not have a fiduciary relationship with its standard deposit account customers but instead owes only a duty of ordinary care in arms-length transactions. *See First Nat. Bank & Tr. Co. of Treasurer Coast v. Pack*, 789 So.

2d 411, 414 (Fla. 4th DCA 2001*); Maxwell v. First United Bank*, 782 So. 2d 931, 934 (Fla. 4th DCA 2001). "This ordinary duty does not require [a bank] to act for the benefit or protection of [account holders]." *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.,* 605 F. App'x 820, 823 (11th Cir. 2015) (citing *Maxwell*, 782 So. 2d at 934) (holding that a bank was not required to investigate the licenses or registrations of a fund transmitter who set up a deposit account on behalf of a foreign bond trader at the bank).

However, "Florida courts permit proof of a statutory violation to serve as prima facie evidence of negligence because 'the standard of conduct or care embraced within such [a] legislative measure[ ] ... represent[s] a standard of at least reasonable care which should be adhered to in the performance of any given activity.'" *Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. 4th DCA 2014) (quoting *Dusine v. Golden Shores Convalescent Ctr., Inc.*, 249 So. 2d 40, 41-42 (Fla. 2d DCA 1971)). "Although proof of a statutory violation will not overhaul the negligence cause of action by converting it into a case sounding in negligence per se, Florida courts do allow the showing of a statutory violation to establish the existence of a duty and a breach thereof." *Ginder v. Bank of Am. Corp.,* No. 6:14-CV-1271-ORL-40, 2015 WL 898595, at *2 (M.D. Fla. Mar. 3, 2015).

FAPSA mandates that when one "knows, or has reasonable cause to suspect, that a vulnerable adult has been or is being abused, neglected, or exploited . . . [banks] immediately report such knowledge or suspicion to the central abuse hotline." Fla. Stat. § 415.1034(1)(a).[1] Here, although FAPSA does not create a private cause of action, a statutory violation of FAPSA can be a factual predicate of a viable common law negligence claim under Florida

---

[1] Reasonable suspicion can be generated by "numerous deposits, withdrawals, and wire transfers involving large amounts of money." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012); *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968) (holding banks in certain circumstances should question transactions that are "not a routine payment"); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1245 (M.D. Fla. 2013) ("This assortment of atypical transactions and suspicious circumstances invariably led to the conclusion that Bank of America *should have known* of ... [the] scheme." (emphasis in original)).

law. *See Regan v. Bank of Am., N.A.*, No. 23-80700-CIV-CAN, 2023 U.S. Dist. LEXIS 173505, at *17 (S.D. Fla. Sep. 27, 2023).

In the Amended Complaint, Plaintiff alleges that Chase Bank was aware that Plaintiff was a "vulnerable adult" (*See* Am. Comp. at ¶ 10); Chase Bank was aware of the precise elder exploitation scam by which Plaintiff was victimized (*see id*. at ¶¶ 48, 53-54, 68); Chase Bank maintains policies and procedures to detect and prevent elder fraud scams, like the one alleged here (*see id*. at ¶ 27); each transaction was suspicious on its face, and taken together the transactions at issue demonstrated a pattern that was well-known by Chase Bank to constitute elder exploitation (*see id*. at ¶¶ 58, 60-62, 68); Chase Bank uses a combination of behavior analytics, real-time transaction monitoring and machine learning to identify anomalies in customer activities and analyzes data points like transaction history, location and device information to build customer profiles and automatically flag deviations (*see id*. at ¶¶ 27, 66-67); Chase Bank's internal systems flagged each of the transactions at issue as "suspicious" before, during and after it processed each of the transactions (*see id*. at ¶¶ 34, 58); Chase Bank had actual knowledge (or reasonable cause to suspect) that the transactions were suspicious because its systems flagged them as such (*see id*. at ¶¶ 35-36, 57-58, 60); and despite knowing and suspecting that the transactions were the result of elder financial exploitation, Chase Bank failed to report to Plaintiff or the Central Abuse Hotline (*see id*. at ¶¶ 38, 59, 106).

Accepting these facts in Plaintiff's Amended Complaint as true, there is a plausible inference that (1) Defendant owed a standard duty of care to Plaintiff, a vulnerable adult; (2) Defendant knew or should have known that Plaintiff was being exploited; (3) Defendant was required to report such exploitation under FAPSA; (4) Defendants non-reporting of the exploitation constituted a breach of the duty of care; and (5) Plaintiff suffered damages as a result. Thus, the Court is satisfied that Plaintiff has stated a claim to relief that is plausible on its face for purpose of Federal Rule of Civil Procedure 12(b)(6).

To the extent Defendant also raises an argument regarding the independent tort doctrine, the Courts finds this position unconvincing. According to Defendant, even if Plaintiff has stated a plausible claim for common law negligence, such a claim is barred by the independent tort doctrine because Plaintiff's tort claims are based on the DAA, an express contract between the parties, covering the same subject matter.

"The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013). This rule, sometimes referred to as the independent tort doctrine, encompasses the "principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020). Although there remains some uncertainty about the contours of the independent tort doctrine, *see generally Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014), the Eleventh Circuit and Florida courts have continued to recognize and apply the doctrine outside of the products liability context.. *See Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1223 (11th Cir. 2018) ("Under Florida law, misrepresentations relating to the breaching party's performance of a contract do not give rise to any independent cause of action in tort, where such misrepresentations are interwoven and indistinct from the heart of the contractual agreement." (internal quotation marks and brackets omitted)).

Here, Plaintiff points out that the Amended Complaint does not reference the DAA[2], no fact or theory is premised on the DAA, and Plaintiff's claims are based on duties entirely separate apart and distinct from the DAA. Against this backdrop, the allegations as pled are

---

[2] "A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 (11th Cir. 2006).

7

insufficient to determine whether Plaintiff's negligence claim is duplicative of a potential breach of contract claim or if it operates independently of a potential breach of contract claim. As such, the Court lacks sufficient information at this time to evaluate the applicability of the independent tort doctrine. Accordingly, Defendant's Motion to Dismiss is denied as to Count I.

### B.        Count II–Breach of Fiduciary Duty

Chase Bank argues that Count II fails because there is no fiduciary relationship between Chase Bank and Plaintiff. However, Plaintiff counters by highlighting her designation as a "Chase Private Client," which she pleads in the Amended Complaint offered her special assurances and as a result created a fiduciary relationship between her and Chase Bank. At this stage of the litigation, the Court finds Plaintiff's position persuasive.

Under Florida law, "[t]he elements of a claim for breach of fiduciary duty are the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002); *see Jaffe v. Bank of Am.*, N.A., 667 F. Supp 2d 1299, 1318–19 (S.D. Fla. 2009). "One in such a fiduciary relationship is subject to legal responsibility for harm flowing from a breach of fiduciary duty imposed by the relationship." *Gracey*, 837 So. 2d at 353.

"To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat'l Bank, N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993) (quoting *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989)). Generally, "[i]n an arms-length transaction, however, there is no duty imposed on either party to act for the benefit or protection of the other party." *Watkins*, 622 So. 2d at 1065 (quoting *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991)). "Under Florida law, a bank does not have a fiduciary relationship with its standard deposit account

customers, but instead owes only a duty of ordinary care in arms-length transactions." *Arbitrajes Financieros, S.A.*, 605 F. App'x at 823; *see First Nat'l Bank and Trust Co. of the Treasurer Coast v. Pack*, 789 So. 2d 411, 414 (Fla. 4th DCA 2001); *Maxwell v. First United Bank*, 782 So. 2d 931, 934 (Fla. 4th DCA 2001).

An implied fiduciary relationship can arise, however, in "circumstances exceeding an ordinary commercial transaction." *Motorcity of Jacksonville, Ltd. v. Se. Bank N.A.*, 83 F.3d 1317, 1340 (11th Cir. 1996), *abrogated on other grounds by Hess v. FDIC*, 519 U.S. 1087 (1997) (quoting *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 521 (Fla. 3d DCA 1994)). In considering "whether a[n implied] fiduciary relationship exists," courts may consider whether a bank "1) takes on extra services for a customer, 2) receives any greater economic benefit than from a typical transaction, or 3) exercises extensive control." *Arbitrajes Financieros, S.A.*, 605 F. App'x at 823 (quoting *Capital Bank*, 644 So. 2d at 519).

Here, Plaintiff alleges that she was not an "ordinary account holder" as in the cases cited by Chase Bank. Rather, Plaintiff was a "Premier Plus Checking" account holder and Chase Bank later elevated her account to a "Chase Private Client" account while the exploitation was ongoing. Plaintiff further alleges that she was required to maintain higher balances with Chase Bank, in order to get these accounts, and Chase Bank represents that such account holders receive a greater level of service and fraud protection than ordinary checking account holders. (*See* Am. Comp. at ¶¶ 120-122.) Due to Chase Bank's assurances in this regard, Plaintiff ultimately deposited more than $1,000,000 with Chase Bank. (*Id*. at ¶ 123.) And ultimately, Chase Bank breached its fiduciary duty to Plaintiff by failing to question or report the suspicious activity, despite having knowledge that the withdrawals were suspicious. (*Id*. at ¶ 130.) Under these facts, Plaintiff has sufficiently alleged that Chase Bank undertook a special role in advising, counseling, or protecting her. In other words, at this stage of the

litigation, Plaintiff has adequately alleged that Chase Bank owed her a fiduciary duty and breached that duty. Thus, Defendant's Motion is denied as to Count II.

### C.    Count III—Negligent Supervision

Defendant argues that Plaintiff cannot meet the elements of a negligent supervision claim. More specifically, Defendant claims Plaintiff has not alleged—and cannot allege—that Chase had notice of any of its employees' "unfitness" or that Chase failed to take corrective action after receiving notice. Based on the current construction of the Amended Complaint, the Court agrees with Defendant.

"Negligent supervision 'occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment.'" *Doe v. NCL (Bahamas) Ltd.,* No. 1:16-CV-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016) (quoting *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012)). "Accordingly, Plaintiff 'must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment.'" *Id.* (quoting *Cruz*, 842 F. Supp. 2d at 1359).

Here, Plaintiff fails to state a claim for negligent supervision because she fails to allege that Chase Bank: (1) had actual or constructive notice of their employees' unfitness; and (2) failed to take corrective action in light of its knowledge. Notably, the Complaint does not name or otherwise describe particular employees. Further, Plaintiff fails to describe a prior event that would have caused Chase Bank to perform an investigation or take corrective action against such employees. Therefore, Count III is dismissed. That said, if Plaintiff discovers the necessary facts during the case, she may move to amend her Complaint in accordance with Federal Rule of Civil Procedure 15.

Accordingly, it is

**ORDERED** that

1. JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint [DE 7] is **GRANTED in part and DENIED in part**.

2. Count III is **DISMISSED without prejudice**.

3. Plaintiff's Request for Hearing [DE 15] is **DENIED as moot**.

4. Plaintiff's Amended Motion for Oral Argument on Defendant's Motion to Dismiss Plaintiff's Amended Complaint [DE 19] is **DENIED as moot**.

5. Defendant shall file its Answer by **July 14, 2026**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 1st day of July, 2026.

Cc: counsel of record

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

11